Thank you, your honor. May it please the court. At the district court level, the judge there erred when he dismissed Thurairajah's state Arkansas Civil Rights Act claims. These claims were for the same as the federal case. They were free speech and unreasonable search and seizure claims. The judge did this, relying on an Arkansas statute that gives state employees immunity in acts or omissions except for those that are malicious. However, the ACRA statute itself sets the standard that courts should look at the Federal Civil Rights Act for persuasive authority on how those statutes are applied. Even in this, this has been upheld in the 8th Circuit as most recently as last summer in Boudoin v. Harsin. That case said that Arkansas statutory immunity, quote, is similar to that provided by the Supreme Court for federal civil rights claims. Be quote, because Harsin's use of force did not violate clearly established principles of law which a reasonable person would have knowledge, he is immune from suit. Still quoting, accordingly, an official is immune from suit if his actions did not violate clearly established principles of law which a reasonable person would have knowledge. And this is the important part of that opinion, and it quotes a case, an Arkansas case, because to demonstrate malice, a plaintiff must show, quote, a conscious violation of the law. And that's how you show malice in Arkansas, is by the same standard as these federal cases, the qualified immunity cases. And these same arguments that the judge relied on were specifically addressed in Barton v. Tabor in 2016 by this court. One of the defendants in that case. Yes, Your Honor? Counsel, would you address the Arkansas cases on their statute seem to emphasize that malicious is, requires that the officer, not just, not that there's law out there that the officer ought to be aware of, but that the statute would appear to require that. If you read Feigens v. Norris, the Arkansas Supreme Court goes into a very long definition of malice and malicious, and it's very, it's several pages. But then at the very end, it says, you know, but, and you demonstrate this by showing clearly established law. And the Arkansas, and in Barton v. Tabor in 2016, this court literally said, one of the defendants, Defendant Owens, he said he wanted more, he wanted more protection under the Arkansas malicious immunity statute. But this court, this Eighth Circuit appropriately read the case law, and it shows that that's, it's not different, it's the same standard. Arkansas calls this statutory immunity qualified immunity. And we know this because there is literally no case ever that has been decided where you have an analogous state or federal right that you pierce federal qualified immunity on, but you don't pierce the Arkansas state statute, ever. What do we do with some of the language that Arkansas seems to add to their idea of malice? And I appreciate your, you know, the citation to our recent Eighth Circuit case, our recent case, that seems to almost, not equate it, but that Arkansas looks to the federal law. But it does have some more, you know, an intent and disposition to do a wrongful act, greatly injurious to another, intentional doing of a wrongful act, implying an evil intent. Are those all separate ways to get at malice? Or is there something that maybe it's sort of what Chief Judge Smith is referring to as well, that there's a more intent? In other words, is there anything different about Arkansas's malice than clearly established? Because it feels different. Well, it does feel different. But if you read every single case and you read it carefully, for some reason in Arkansas, we outline it as basically the qualified immunity statute. And by say basically, I mean it's the exact same thing. They go on for pages about malice and they define it, but then they go back and say, well, this is, you know, because it was clearly established, you know, this is met. So it doesn't, I know that they add this stuff and they talk about some of their opinions. But when you look at the practical result, and when you look at words like because to demonstrate malice, everything before that, it's not also to demonstrate malice. It's not but to demonstrate malice, it's because. So an official is immune from suit if his actions did not violate clearly established principles of law, which a reasonable person would have knowledge. Because to demonstrate malice, a plaintiff must show a conscious violation of law. And so you where the plaintiff is expected to show that the officer knew something that is never seen. I know that, but the court keeps saying that there's these things out there. It's greatly injurious to others and have an intent to inflict an injury or under circumstances that would apply an evil intent. And, you know, it is what the Arkansas courts are just in the business of mere surplusage that that seems to be talking about all these horrible things. But then, but never mind, we actually are applying exactly the same laws they apply in federal courts. And if so, why wouldn't they just say that? Well, I think they do say it. Every single time they say we apply a similar standard, and then they define the qualified immunity standard. And they actually are. Our decision in Bowdoin interpreted Arkansas law to require a consciousness of violation of the law. Well, that's that's one way to when I read it, Your Honor. That's how I first read it. But if you. The language is Bowdoin cannot show malice because he has not shown a conscious violation of the law. Yes. But under Arkansas law, you show a conscious violation of the law by showing that every reasonable officer should have known that this was the law. And if you look at every case, that's how they define it. They've never Arkansas has never required you to define has never required you to actually prove that an officer has actual knowledge or that they actually have. It's always defined as as this conscious violation of the law, via piercing the same federal qualified immunity standard. So another point that I was going to make is that the attorney misconduct in this case, I believe warrants a new trial. The defense attorney and I reached an agreement to not call John Settle, the city prosecutor who prosecuted this case. And that agreement was recorded in the three and a half minute conversation. And that agreement was reduced to email that could not even be more clear, says John Settle. I'm not calling him as a witness. If you're not blaming the city or settle for criminal defense attorney's fees on June 2nd ish 2015 arrest of Eric. And if you listen to that audio, it's painfully clear that we have a crystal clear agreement that he agrees to. And then on the trial, spanning almost, I think, spanning six different pages of the record and six questions about who was responsible for the criminal defense attorney's fees. Mr. France obviously flaunted that agreement. And that was injurious to Mr. Thurajah because if you look at the actual concrete damages, that's roughly 86% of them were centered around his criminal defense attorney's court, potential expungement costs and things like that. And that we requested a new trial under rule 59 and the eighth circuit held in Sanders V or Sanders L V Winsowitz that the defense attorney in a 1983 case attempted to bring in evidence that it had been agreed would not be admitted at trial. And then dropped about a 10 foot printout of all these crimes that the plaintiff had allegedly committed. So, uh, I think the court in that city has to be manifest intent of the conduct to arouse prejudices. And I think we have that here and I, I yield my time. Thank you, Mr. Hyman, Mr. France. Thank you, your honor. May it please the court. Vincent France. I'm an assistant attorney general for the state of Arkansas representing triple Ligurian cross. There's two important facts on this appeal to keep in mind. Through Raja did not present sufficient evidence that trip across. Mr. France, do you have a camera? Is your camera working? I'm sure that's on your honor. Okay, well, you're not showing up visibly, but we can hear you. Chief Smith. Yes, clerk. If you just unpin him and then try to pin him again, sometimes it resolves itself, but we have him. Okay. Well, it didn't work for me, but I can hear him. So proceed. Yes, sir. It's on the direct appeal. One of the most important facts is, again, this, the fact that through Raja did not present sufficient evidence of malice or evil motive. And thus the district court correctly dismissed the Arkansas civil rights claim at summary judgment and denied his request for punitive damage. Regarding the cost of this issue of the conscious violation of the law, your honors, that requires a subjective inquiry for both punitive damages and under the Arkansas civil rights. Unlike the objective standard for malice and determined qualified immunity, malice for the punitive damages and civil rights is again, a subjective inquiry that requires evidence of evil motive or callous indifference. At the trial, there was no evidence presented that Trooper Cross acted with malice or evil motive because he testified that he subjectively thought that through Raja had committed disorderly conduct because of the alarmed reaction of the children. Do you have Arkansas case law that says what you've just described, which is this is a subjective analysis for malice? Your honor, there is a case law that indicates that it's a separate and different than the qualified immunity analysis. And is it separate and different because of this subjective nature? Is that what you're saying the case law says? Yes, your honor. And based upon it requiring a conscious violation, indicates it's got to be a subjective intent and not just what objectively should have been. Do you have a citation for that proposition? Your honor, yes. 521 Southwest 3rd, 459, Arkansas 2017. And that's Arkansas State Medical Board versus Byers. And it was also cited by the district court, appendix page 13, in support of its dismissal of the Arkansas Civil Rights Act claim. And because of the Title 19 statutory immunity, the district court was correct in dismissing that judgment. The Arkansas Civil Rights Act claim. I want to briefly discuss the issue of punitive damages. This court has found in reverse punitive damages award in other cases that were even more egregious than the facts at hand. Most notably, Coleman versus Rajah, in which prison officials disregarded a female inmate who was in labor when they knew that she was in labor. Because there was no evidence of malice or evil motive. Likewise, this court in Washington versus Denny reversed the awarding of punitive damages for an inmate who suffered from chronic and severe asthma that was continually exposed to secondhand smoke because of the actions of government officials. The lessons from those cases is that the egregious standard which this legal standard and the district court must serve as a gatekeeper in determining whether or not sufficient evidence had been presented to warrant the submission of the issue to the jury. And in this case, the district court was correct that no evidence regarding punitive damages was sufficiently submitted. Regarding the attorney misconduct, your honor, that's a red herring. No attorney misconduct occurred. Even if to show attorney misconduct, the plaintiff or Mr. Rajah would have to show that it was clearly injurious, which it wasn't. Moreover, this court gives great deference to the trial court's decision. In this case, the district court found that even if, first, he didn't believe that any misconduct occurred, but even if there was alleged misconduct, it did not have any effect on the plaintiff's inability to convince the jury. So, you know, based upon the standard that this court has set, it was not of use of discretion for the trial court not to grant the motion for new trial. Your honor, on the cross appeal, I would like to discuss that because an important issue in this case is that the jury found that Trooper Cross was not the approximate cause of damages. As a result, the district court's awarding attorney's fees is legally contrary to the Supreme Court's decision in Farrar v. Hobby, which is squarely on point. In that case, the jury found that the defendants had violated the plaintiff's civil rights. However, the jury found that the subsequently that that plaintiff was awarded nominal damages and attorney's fees, which is exactly what has happened in this Tharaja case. The Supreme Court held that when a plaintiff recovers only nominal damages because of his failure to prove an essential element of this claim, his claim, element of this claim for monetary relief, the only reasonable fee is usually no fee at all. Justice O'Connor further explained in her concurring that for attaining a victory, the reasonable fee is zero. Thus, Farrar stands for the proposition that when a plaintiff fails to prove the approximate cause of damages, then the plaintiff is not entitled to attorney's fees. Likewise, Tharaja failed to prove an essential element of his claim because the jury found that Trooper Cross was not the approximate cause of damages. Thus, the district court erred in awarding attorney's fees and it should be reversed because it is, Farrar is directly on point and the district court's decision is clearly contrary to that decision. Thus, Your Honor, Trooper Cross, to kind of summarize, asks that this court affirm the decision on Mr. Tharaja's appeal regarding the dismissal of the Arkansas Civil Rights Act and the denial of the punitive damages claim. In addition, Tharaja cannot show abuse of discretion or that it was injurious in any way or prejudiced in any way by the denial of the new trial. So, the district court's decision should be affirmed as to the issue of attorney's fees. Like I've said, he asked that this court find that Tharaja is not entitled to attorney's fees at all because the district court's decision is simply contrary to the Supreme Court's decision in Farrar v. Hobby. Therefore, we ask that you find that the only reasonable fee for Mr. Tharaja is no fee at all. And even though I've still got time remaining, unless the panel has any more questions, I yield my time. All right. Thank you, Mr. France. Mr. Hyman, your rebuttal. I need to unmute your mic. Sorry, Your Honor. So, Piper v. Oliver is a defense, is a case of defense sites that they want this court to explicitly overturn. It's a case where a guy was arrested for three and a half hours at a police station and then this in the Eighth Circuit upheld that his attorney should get attorney fees for that lawsuit. You know, I don't see a need to revisit that. It's pretty much the exact same fact pattern except for our case involves free speech. Additionally, Mr. France keeps saying that the court found that there was no misconduct, but the court never said that and in fact said things the opposite. All right. Thank you, Mr. Hyman. Thank you also, Mr. France. We appreciate both counsel's argument to the court this morning. We have your briefing and we'll continue to study it and we'll take the case under advisement.